CRAWFORD, Appellant,

v.

RIBBON TECHNOLOGY CORPORATION, et al., Appellees.

[Cite as *Crawford v. Ribbon Tech. Corp.* (2000), 138 Ohio App.3d 326.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 99AP–654.

Decided June 29, 2000.

*Arter & Hadden, LLP, Michael P. Mahoney* and *Shane M. Dawson,* for appellant.

*Buckley, King & Bluso, Peter R. Harwood* and *James E. Melle,* for appellees.

PETREE, Judge.

Plaintiff, Richard Crawford, was formerly employed by defendant Ribbon Technology Corporation. On March 2, 1993, plaintiff and defendant entered into a written employment and deferred compensation agreement. That agreement

comprehensively set forth the duties and obligations of both parties, and contained a broad arbitration clause that provided that any dispute between the parties would be settled by binding arbitration.

The plaintiff remained in the defendant's employ until December 31, 1996. However, after that date, the parties found themselves unable to reach an amicable agreement regarding the plaintiff's contention that he is the owner of certain trade secrets developed while employed by the defendant. At the defendant's request, a hearing was held before an American Arbitration Association arbitrator on August 14, 1997. On August 21, 1997, the arbitrator issued an award that addressed the ownership of different manufacturing processes, the date of plaintiff's termination, and the scope of a noncompete provision of the parties' employment agreement. We refer to this as the "first" award, which provides in its entirety:

"I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Arbitration Agreement entered into between the above-named Parties and dated October 1, 1991, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, do hereby, AWARD, as follows:

"1. Crawford's employment was terminated by Ribbon Technology Corporation on December 31, 1996, and his rights under all agreements shall be determined as of that date.

"2. Crawford's reserved rights under the Employment Agreement are set forth in Action Plan Step 1, and are strictly limited to a process for forming and drawing a composite of nickel spun fibers in a solid aluminum matrix and the aluminum matrix metal is dissolved in caustic soda.

"3. Crawford has no ownership rights in processes developed while an employee at Ribbon Technology Corporation that are not a combination of nickel fibers, in an aluminum matrix and caustic soda is used to dissolve alumimum [sic] matrix.

"4. Crawford was not an employee in 1997.

"5. Pursuant to Clause 5 of Appendix C of the Employment Agreement, Crawford must elect ONE of the options set forth in Clause 5. Crawford shall make his election in writing on or before October 31, 1997, or he shall be deemed to have elected Option 1 for deferred compensation plus salary.

"6. Crawford has no equity interest in Ribbon Technology Corporation or the spin off company, Micro Metal Fibers, Inc.

"7. The Restrictive Covenants set forth in the Employment Agreement, Paragraph 15, and Clause 7 of its Appendix C do not apply to Crawford.

"8. The Non–Competitive clause in the Deferred Compensation Agreement, Clause 5, shall apply for a period of one year commencing December 31, 1996, and shall apply only to a competing business using a bundled drawing process to make micro metal wire or fiber, which process starts with steel matrix sheathing in the shape of an open trough, containing two wires or fibers of stainless steel or nickel, and where the steel sheathing after rolling is removed with an acid rinse.

"9. The AAA administrative fees and expenses totaling $3,550.00 shall be borne as incurred. Therefore, claimant and respondent shall pay the sum of $62.13 directly to the American Arbitration Association for fees still outstanding.

"10. The arbitrators [sic] compensation and expenses totaling $1,124.25 shall be borne equally between the parties.

"11. This Award is in full settlement of all claims Submitted to this Arbitration."

On October 17, 1997, a second award was rendered, which provides:

"A hearing was held in the above referenced case on August 14, 1997, in Columbus, Ohio, at which both parties attended with counsel. The hearing was concluded at 6:20 PM. No briefs were submitted. The parties have now raised a new question regarding the nature of Mr. Crawford's termination. They requested that an opinion be provided on this matter. Upon reading the pleadings and hearing the evidence presented by the parties through testimony and documents, the Arbitrator has arrived at the following Award.

"AWARD

"Crawford's employment was terminated without cause by Ribbon Technology Corporation."

On May 8, 1998, plaintiff filed a complaint to enforce the arbitration awards with the Franklin County Court of Common Pleas. Defendant later filed a motion for summary judgment arguing that the second arbitration award is a nullity, which cannot be enforced. Defendant argued that the issue of whether the plaintiff was terminated with or without cause was an issue which the parties, and specifically the defendant, had not agreed to arbitrate. Thus, defendant argued that because it did not agree to arbitrate the issue of plaintiff's termination, the arbitrator acted beyond the authority given to him, and, consequently, that his second award was a nullity. Plaintiff opposed defendant's motion, and, in addition, filed a motion to strike on the basis that defendant is barred from attacking the validity of the awards pursuant to R.C. 2711.13. On May 12, 1999, the trial court granted the defendant's motion for partial summary judgment, granted in part the plaintiff's request to confirm and enforce, enforcing only the first arbitration award, and denied plaintiff's motion to strike. Plaintiff now appeals raising the following eight assignments of error:

"[1.]   The common pleas court erred in failing to confirm and then enforce the second arbitration award dated October 21, 1997.

"[2.]   The trial court was barred as a matter of law by Revised Code Sections 2711.10 and 2711.11 from entertaining any affirmative pleadings of any sort from Ribtec in opposition to appellant's motion to confirm and enforce the first and second arbitration awards, and erred in failing to strike Ribtec's motion for summary judgment.

"[3.]   The trial court erred in failing to exclude the evidence identified in appellant's motion in limine filed with the trial court on March 8, 1999.

"[4.]   The common pleas court erred in accepting Ribtec's evidentiary matters as argued throughout its memorandum in support of its motion for partial summary judgment, because no arbitration transcript was made and without a complete record, the court of common pleas is confined to the two awards for its facts.

"[5.]   The court of common pleas erred in determining as a matter of law that arbitrator Young's powers had expired after the first award and that he no longer had authority or jurisdiction to render any decision concerning a dispute between the parties unless they both agreed to submit new issues for consideration.

"[6.]   The trial court abused its discretion in ruling that only it, not the arbitrator, was vested with authority to determine whether or not the parties agreed to arbitrate the issue underlying the second award.

"[7.]   The trial court erred in failing to award appellant pre-judgment interest.

"[8.]   Ribtec is estopped or has waived the argument that arbitrator Young was not empowered by the parties to issue the second award."

Although set forth as eight distinct assignments of error, assignments one through six, in addition to assignment eight, depend upon an analysis of the provisions governing arbitration awards set forth in R.C. Chapter 2711.   Thus, these assignments will be dealt with collectively.

In *Warren Edn. Assn. v. Warren City Bd. of Edn.* (1985), 18 Ohio St.3d 170, 18 OBR 225, 480 N.E.2d 456, the Ohio Supreme Court explained:

"* * * R.C. 2711.09 through 2711.14, inclusive ' * * * provide the only procedures for post award attack or support of an arbitration decision.   However, an appeal may be taken "from an order confirming, modifying, correcting, or vacating an award made in an arbitration proceeding or from a judgment entered upon an award."   But the review is confined to the order.   The original arbitration proceedings are not reviewable.' "   *Id.* at 173–174, 18 O.B.R. at 228, 480 N.E.2d at 459.

The court went on to explain:

"[I]t is thus clear that when a motion is made pursuant to R.C. 2711.09 to confirm an arbitration award, the court must grant this motion if it is timely, unless a timely motion for modification or vacation has been made and cause to modify or vacate is shown." *Id.* at 174, 18 OBR at 228, at 480 N.E.2d at 459.

In *Galion v. Am. Fed. of State, Cty. & Mun. Emp., Ohio Council 8, AFL–CIO, Local No. 2243* (1995), 71 Ohio St.3d 620, 646 N.E.2d 813, the Supreme Court clarified:

"[W]e hold that R.C. 2711.13 provides a three-month period within which a party must file a motion to vacate, modify, or correct an arbitration award. We further hold a party may not file a declaratory judgment action under these circumstances, but is instead limited to following the statutory procedure set forth in R.C. Chapter 2711 when challenging an arbitration award.

"R.C. 2711.10 and 2711.11 clearly establish the circumstances where a party may appeal to the common pleas court to vacate, modify, or correct an arbitration award. * * *

"* * *

"In our view, the language of R.C. 2711.13 is clear, unmistakable and, above all, mandatory. R.C. 2711.10 specifies when an arbitration award can be vacated, R.C. 2711.11 establishes the circumstances under which the common pleas court may modify or correct an arbitration award, and R.C. 2711.13 states the time frame in which the motion must be made. We are unpersuaded by appellant's argument that the statute of limitations in R.C. 2711.13 does not apply to motions brought under R.C. 2711.10 and 2711.11. If the General Assembly did not intend for the statute of limitations in R.C. 2711.13 to apply, it would have expressly excluded R.C. 2711.10 and 2711.11 from that section." *Id.* at 621–622, 646 N.E.2d at 814–815.

Finally, the Supreme Court concluded:

"Thus, in answering the certified issue, we hold that R.C. 2711.13 provides a three-month period within which a party must file a motion to vacate, modify, or correct an arbitration award under R.C. 2711.10 or 2711.11. If an application is filed after this period, the trial court lacks jurisdiction. * * *" *Id.* at 622, 646 N.E.2d at 815.

██ In this case, the trial court concluded that it would be inappropriate to apply the three-month statute of limitations contained in R.C. 2711.13 to the second award, because it believed that the defendant did not enter into an agreement to submit the question of whether the plaintiff's termination was with or without cause to the arbitrator. We conclude that this was in error.

A state court, faced with a motion to compel arbitration, must first decide whether the parties agreed to arbitrate the dispute by applying the "federal substantive law of arbitrability." *Weiss v. Voice/Fax Corp.* (1994), 94 Ohio App.3d 309, 313, 640 N.E.2d 875, 877, citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.* (1985), 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444, 454–455. The federal substantive law of arbitrability was set forth by the United States Supreme Court in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967), 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270.

Under *Prima Paint,* the existence of a contract containing a broad arbitration agreement, which was admittedly signed by the contractual parties, creates a presumption that the parties agreed to arbitrate all disputes, including those regarding the validity of the contract in general. See, *e.g., Chastain v. Robinson–Humphrey Co., Inc.* (C.A.11,1992), 957 F.2d 851, 854.

"It is well recognized that a clause in a contract providing for dispute resolution by arbitration should not be denied effect unless it may be said with positive assurance that the subject arbitration clause is not susceptible [of] an interpretation that covers the asserted dispute." *Neubrander v. Dean Witter Reynolds, Inc.* (1992), 81 Ohio App.3d 308, 311, 610 N.E.2d 1089, 1090. Moreover, "[i]n examining an arbitration clause, a court must bear in mind the strong presumption in favor of arbitrability and resolve all doubts in favor of arbitrability." *Id.* at 311, 610 N.E.2d at 1090–1091. Indeed, R.C. 2711.01(A) provides:

"A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."

There are two types of arbitration clauses: (1) unlimited clauses providing for arbitration of all disputes arising out of a contract and (2) limited clauses providing for arbitration of a specific type of dispute arising out of a contract. *Didado v. Lamson & Sessions Co.* (1992), 81 Ohio App.3d 302, 610 N.E.2d 1085. Paragraph sixteen of the parties' employment contract provides:

"Any controversy or claim arising out of, or relating to this Agreement, or the breach thereof, shall be settled by arbitration in the City of Columbus in accordance with the rules then obtaining of the American Arbitration Association,

and judgment upon the award rendered my [*sic*] be entered and enforced in any court having jurisdiction thereof."

The arbitration clause to which the defendant admittedly agreed is broadly defined, as it applies to "[a]ny controversy or claim arising out of, or relating to" the employment contract. As noted, the existence of a contract containing a broad arbitration agreement, which was admittedly signed by the parties, creates a presumption that the parties agreed to arbitrate all disputes unless expressly excluded or unless there exists the most forceful evidence of a purpose to exclude the claim from arbitration. *Internatl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local Union 20 v. Toledo* (1988), 48 Ohio App.3d 11, 13, 548 N.E.2d 257, 259–260.

In this case, there is no question that the parties agreed to arbitrate all disputes arising out of the employment contract. Furthermore, there is no provision in the parties' agreement excluding any issue from arbitration, nor does the record contain any other evidence of a specific purpose to exclude disputes arising from plaintiff's termination. Therefore, the parties' agreement clearly encompasses an agreement to arbitrate the issue of whether plaintiff's employment was terminated with or without cause. As such, the trial court was incorrect in finding that the issue of plaintiff's termination was a "new" issue that fell outside the scope of the arbitration agreement.

Because the issue of plaintiff's termination was subject to the parties' arbitration agreement, as set forth in *Warren Edn. Assn., supra,* the trial court was required to affirm the plaintiff's timely request to confirm the arbitrator's awards, unless the defendant made both a timely challenge to the awards and demonstrated cause that the awards should be vacated either in whole or part. R.C. 2711.09. As set forth above, R.C. 2711.13 provides a three-month statute of limitations within which to file a challenge to an arbitration award; and, as explained by the Supreme Court in *Galion, supra,* the failure to meet the statute divests the trial court of jurisdiction.

In this case, defendant clearly failed to raise a challenge to either the first or second award under R.C. 2711.10(D) or 2711.11(B) within the three-month statute of limitations. As such, the trial court lacked jurisdiction to hear defendant's challenge and was required by R.C. 2711.09 to grant plaintiff's timely application to confirm. Accordingly, plaintiff's first, second, third, fourth, fifth, sixth, and eighth assignments of error are sustained.

In his seventh assignment of error, plaintiff maintains that the trial court erred when it refused to award plaintiff prejudgment interest. However, as the trial court did not address the issue of prejudgment interest in its decision, we sustain plaintiff's seventh assignment of error and remand this matter for the

trial court's consideration of plaintiff's R.C. 1343.03(A) interest claim in light of our ruling sustaining plaintiff's assignments of error one through six, and eight.

Having sustained all eight of plaintiff's assignments of error, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed*
*and cause remanded.*

BROWN and MCCORMAC, JJ., concur.

JOHN W. MCCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.